UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE LOJA LOJA,

                    Petitioner,

        - against -

ACTING FIELD OFFICE DIRECTOR
OF NEW YORK ICE ENFORCEMENT
AND REMOVAL OPERATIONS, ET
AL.,

                    Respondents.

26-cv-5368 (JGK)

Memorandum
Opinion and Order

**John G. Koeltl, District Judge:**

The petitioner, Jose Loja Loja, is a native and citizen of Ecuador who was arrested by Immigration and Customs Enforcement ("ICE") pursuant to a Form I-200, Warrant for Arrest of Alien, during an enforcement operation targeting another noncitizen. He is currently detained pursuant to 8 U.S.C. § 1226(a). Mr. Loja Loja seeks a writ of habeas corpus under 28 U.S.C. § 2241 on the grounds that ICE arrested him pursuant to a Form I-200 before issuing a Form I-862, Notice to Appear, as required by 8 C.F.R. § 236.1(b)(1), and detained him without first making the individualized custody determination required by 8 C.F.R. § 236.1(c)(8), in violation of those regulations and the Due Process Clause of the Fifth Amendment. For the following reasons, Mr. Loja Loja's petition is **denied**.

## I.

The following facts are drawn from the petition, the Government's return, and the accompanying declaration and exhibits. The facts are undisputed unless otherwise noted.

## A.

On June 24, 2026, ICE conducted an enforcement operation in the Bronx, New York, to locate and arrest a male noncitizen with the surname "Loja" (the "intended target") in the vicinity of his last-known address, 1806 E. Gun Hill Road. Decl. of Supervisory Detention & Deportation Officer Brendan Cuni ("Cuni Decl.") ¶ 7, ECF No. 10. Before conducting the operation, ICE had issued a Form I-205, Warrant of Removal/Deportation, against the intended target. Id.

During the operation, ICE officers observed a group of five men standing near a white vehicle bearing a Pennsylvania license plate in front of 1806 E. Gun Hill Road. Gov't Return, Ex. A ("Form I-213"), ECF No. 9-1. The officers conducted a records check based on the vehicle's license plate number and determined that the vehicle was registered to the intended target. Id. The ICE officers, who were wearing body armor with agency-issued placards and badges displayed clearly, approached the group, identified themselves as ICE officers, and stated that they were looking for "Loja." Id. Upon hearing "Loja," three of the five men fled on foot, including the petitioner. Id. Two of the three men who ran were apprehended, again including the petitioner. Id.

The ICE officers asked the petitioner to identify himself. Id. He stated that his name was Jose Loja Loja and that he was from Ecuador. Id. Based on Mr. Loja Loja's statement that he was from Ecuador and his attempted flight, the ICE officers concluded that they had reasonable suspicion that Mr. Loja Loja was in the United States unlawfully and decided to conduct a field interview. Id. During the field interview, Mr. Loja Loja freely stated that he was a native and citizen of Ecuador, that he had entered the United States unlawfully, and that he lacked documents allowing him to remain in the United States. Id. Also during the field interview, the ICE officers conducted a database check by calling the ICE Law Enforcement Support Center, which confirmed the accuracy of the information Mr. Loja Loja had provided. Id.

At approximately 4:37 p.m., while still on the scene, Supervisory Detention and Deportation Officer Brendan Cuni determined, based on Mr. Loja Loja's voluntary statement and the confirmation provided by the database check, that there was probable cause to believe that Mr. Loja Loja was removable from the United States. Cuni Decl. ¶ 7. Officer Cuni therefore issued a Form I-200, Warrant for Arrest of Alien, for Mr. Loja Loja. Gov't Return, Ex. C ("Form I-200"), ECF No. 9-3. At approximately 4:45 p.m., the ICE officers arrested Mr. Loja Loja pursuant to the Form I-200. Cuni Decl. ¶ 7. The ICE officers then served the Form I-200 on Mr. Loja Loja, advised him of its contents in Spanish, and brought him to 26 Federal Plaza in Manhattan for processing and an initial custody determination. Id.

3

During processing at 26 Federal Plaza, ICE issued and served on Mr. Loja Loja a Form I-862, Notice to Appear, which charged him as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. Gov't Return, Ex. D (the "NTA"), ECF No. 9-4. ICE also conducted an initial custody determination during processing pursuant to 8 U.S.C. § 1226(a). Cuni Decl. ¶ 9. Although ICE concluded that Mr. Loja Loja did not pose a danger to the community, it nonetheless determined that he should remain detained pending his removal proceedings because he had not carried his burden of showing that he was not a flight risk. Id. ICE's decision rested on Mr. Loja Loja's attempted flight, his unlawful entry into the United States, his lack of permanent address, and his lack of legal ties to the community. Id.

ICE memorialized its initial custody determination at 9:34 p.m. in a Form I-286, Notice of Custody Determination, Gov't Return, Ex. G ("Form I-286"), ECF No. 9-7, and provided Mr. Loja Loja with notice of that determination, Cuni Decl. ¶ 9. The Form I-286 stated that Mr. Loja Loja could request a review of his initial custody determination by an immigration judge. Id. Mr. Loja Loja refused to sign an acknowledgement of that notice, but he did request that an immigration judge review ICE's initial custody determination. Form I-286.[1] ICE also completed a worksheet documenting the initial custody

---

[1] Although Mr. Loja Loja checked the box requesting review of ICE's initial custody determination on his Form I-286, "there is no indication [he] has

determination that same day, as required by the terms of the stipulated settlement in <u>Velesaca v. Decker</u>, No. 20-cv-1803 (S.D.N.Y. Mar. 10, 2022), ECF No. 177. Gov't Return, Ex. H (the "Velesaca Worksheet"), ECF No. 9-8.

After processing Mr. Loja Loja, ICE filed the NTA with the Executive Office for Immigration Review ("EOIR") on the evening of June 24, 2026. Cuni Decl. ¶ 10. ICE also filed a Form I-830, Notice to EOIR: Alien Address, which listed Delaney Hall Detention Facility in Newark, New Jersey, as his address in anticipation of his transfer there. <u>Id.</u> On June 25, 2026, Mr. Loja Loja was transferred from 26 Federal Plaza to Delaney Hall, where he remains detained pursuant to 8 U.S.C. § 1226(a). <u>Id.</u> ¶ 11. On June 26, 2026, EOIR issued a hearing notice and scheduled Mr. Loja Loja for an initial calendar hearing on July 23, 2026. <u>Id.</u> ¶ 12.

## B.

On June 25, 2026, Mr. Loja Loja filed this petition for a writ of habeas corpus, alleging that his arrest and detention violate 8 C.F.R. § 236.1(b)(1) and (c)(8), and the Due Process Clause of the Fifth Amendment. He requests immediate release, or, alternatively, a constitutionally adequate bond hearing. ECF No. 1. The Government filed a return and an opposition to the petition. ECF Nos. 9, 11. The parties do not dispute that Mr. Loja Loja was located in this district when he filed his petition.

---

submitted a request to the immigration court." Resp't's Mem. Opp'n Pet. ("Opp'n") 11 n.5, ECF No. 11 (citing Cuni Decl. ¶ 13).

## II.

Mr. Loja Loja is detained pursuant to 8 U.S.C. § 1226(a), which authorizes the Government to "arrest[] and detain[]" a noncitizen "pending a decision on whether the alien is to be removed from the United States."[2]

District courts have the authority pursuant to 28 U.S.C. § 2241 to issue a writ of habeas corpus to any petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The jurisdiction conferred on federal courts by Section 2241 includes the authority to review [a] noncitizen's claims challenging the constitutionality of [his or her] detention during the pendency of removal proceedings." J.C.G. v. Genalo, No. 24-cv-8755, 2025 WL 88831, at *3 (S.D.N.Y. Jan. 14, 2025).

Although § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the . . . denial of bond or parole," "[t]he Supreme Court has made clear that § 1226(e) does not . . . limit habeas jurisdiction over constitutional claims or questions of law." Velasco Lopez v. Decker, 978 F.3d 842, 849–50 (2d Cir. 2020).

Mr. Loja Loja filed this petition on June 25, 2026, while he was detained at 26 Federal Plaza and thus within this district. Jurisdiction is assessed at the time of filing, and his subsequent transfer to Delaney Hall did not divest the Court of jurisdiction. See Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004); Ex

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

parte Endo, 323 U.S. 283, 305 (1944). The respondents do not contend that the Acting Field Office Director is an improper respondent or that this district is an improper forum. Cf. Öztürk v. Hyde, 136 F.4th 382, 390 (2d Cir. 2025).

### III.

Mr. Loja Loja argues that his detention is unlawful on two grounds. First, he contends that ICE has violated its own regulations. According to Mr. Loja Loja, 8 C.F.R. § 236.1(b)(1) requires ICE to issue an NTA before arresting a noncitizen pursuant to a Form I-200. Because ICE issued the NTA several hours after arresting Mr. Loja Loja, he contends that ICE violated § 236.1(b)(1). The petitioner also argues that 8 C.F.R. § 236.1(c)(8) requires ICE to conduct an individualized custody determination before detaining a noncitizen. Because ICE did not conduct its initial custody determination until it processed him at 26 Federal Plaza—hours after his arrest—he contends that ICE violated § 236.1(c)(8). In Mr. Loja Loja's view, ICE's alleged violations of these regulations entitle him to immediate release. Second, the petitioner argues that by detaining him in violation of these regulations, ICE has violated his due-process rights, which entitles him to release.

The petition fails on both grounds. The petitioner has not shown how ICE's purported violation of 8 C.F.R. § 236.1(b)(1) has prejudiced him and he has failed to show that the respondents violated 8 C.F.R. § 236.1(c)(8) at all. Mr. Loja Loja's due-process argument likewise fails because the process Mr. Loja Loja received—an individualized determination within hours, written

7

notice, and the availability of de novo review by an immigration judge—satisfies the Fifth Amendment's requirements.

## A.

Mr. Loja Loja argues that ICE violated two of its own regulations. First, he contends that ICE violated 8 C.F.R. § 236.1(b)(1) by arresting him pursuant to the Form I-200 <u>before</u> issuing an NTA. Second, he argues that ICE violated 8 C.F.R. § 236.1(c)(8) by making an initial custody determination hours after arresting him. The Court addresses each regulation in turn.

## 1.

Section 1226(a) of Title 8 provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). One of the Department of Homeland Security's implementing regulations, 8 C.F.R. § 236.1(b)(1), provides that "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." According to Mr. Loja Loja, these provisions make clear that when, as in this case, ICE elects to arrest an alien pursuant to a Form I-200, it may do so only after first issuing an NTA. <u>See, e.g.</u>, <u>Gopie v. Lyons</u>, No. 25-cv-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025). This argument fails, however, because even accepting Mr. Loja Loja's contention that ICE failed to comply with the sequencing

requirement of 8 C.F.R. § 236.1(b)(1), he has not shown how that violation prejudiced him.

The Court of Appeals for the Second Circuit has explained that "under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations." Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020). But "not every technical violation of a regulation necessitates invalidating agency action." Lin v. Almodovar, No. 25-cv-9639, 2025 WL 3706626, at *4 (S.D.N.Y. Dec. 22, 2025). In Waldron v. Immigration & Naturalization Service, the Court of Appeals held that where a regulation is "promulgated to protect a fundamental right derived from the Constitution or a federal statute, and [immigration agencies] fail[] to adhere to it, the challenged" agency action "is invalid." 17 F.3d 511, 518 (2d Cir. 1993). But where the violated regulation "does not affect fundamental rights derived from the Constitution or a federal statute," the noncitizen must show that he was prejudiced by the violation. Id.; see also Rajah v. Mukasey, 544 F.3d 427, 447 (2d Cir. 2008) ("We hold that pre-hearing regulatory violations are not grounds for termination, absent prejudice that may have affected the outcome of the proceeding, conscience-shocking conduct, or a deprivation of fundamental rights" because "[i]n the case of harmless, nonegregious, pre-hearing violations, termination would provide no benefit other than a windfall delay to the deportable alien.").

Mr. Loja Loja may argue that he need not show prejudice because § 236.1(b)(1) protects his interest in physical liberty, which is fundamental. See

9

Montilla v. INS, 926 F.2d 162, 169 (2d Cir. 1991) ("[A]n alien claiming the INS has failed to adhere to its own regulations regarding the right to counsel in a deportation hearing is not required to make a showing of prejudice before he is entitled to relief."). But the Court of Appeals has explained that Montilla is limited "to its express terms" and "may not be interpreted as suggesting an absolute no prejudice standard whenever a challenged regulation is for the benefit of an alien." Waldron, 17 F.3d at 517. The question is not whether the noncitizen has a fundamental interest at stake—every detained noncitizen does—but whether the violated regulation was promulgated to protect such an interest. Id. at 517–18. The regulation in Montilla required immigration officials to advise a noncitizen of the right to counsel, a right "which traces its origins to concepts of due process." Id. at 518. Section 236.1(b)(1) is of a different order. It specifies the sequence in which two documents issue; it does not confer a right, allocate a burden, or constrain the substantive grounds for detention.

To establish his entitlement to relief, Mr. Loja Loja must therefore show that ICE's violation of the regulation prejudiced him—in other words, that he suffered some harm that he would not have suffered had the NTA issued before ICE arrested him. But the petitioner has failed to make any showing of prejudice. As an initial matter, ICE issued the Form I-200 at 4:37 p.m. and arrested Mr. Loja Loja at 4:45 p.m. Cuni Decl. ¶ 7. ICE processed Mr. Loja Loja and issued an NTA only hours later on the same evening. Id. ¶ 8. Mr. Loja Loja

never explains how ICE's purported sequencing error prejudiced his liberty interest when the temporal gap was at most several hours.

The parties also agree that regardless of whether ICE issued an NTA before arresting Mr. Loja Loja pursuant to the Form I-200, ICE properly issued an NTA within hours thereafter. There is no question that if Mr. Loja Loja were released now, "there would be next to nothing stopping respondents from immediately re-detaining [the petitioner] mere seconds afterward, following the procedures for individuals arrested and detained under Section 1226(a)." A.P.A. v. Arteta, No. 26-cv-3334, 2026 WL 1587452, at *3 (S.D.N.Y. June 3, 2026).

Finally, Mr. Loja Loja's argument turns on the Government's decision to arrest him pursuant to 8 U.S.C. § 1226(a) and 8 C.F.R. § 236.1(b)(1), which apply when an alien is arrested under a Form I-200. But the parties do not dispute that ICE could instead have arrested Mr. Loja Loja pursuant to 8 U.S.C. § 1357(a)(2) and its implementing regulation, 8 C.F.R. § 287.8(c), if ICE had not issued a Form I-200. Section 1357(a)(2) provides that "[a]ny officer or employee of the Service under regulations prescribed by the Attorney General shall have power without warrant . . . to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). The arresting officers in this case would have had probable cause to believe that Mr. Loja Loja was in the United States unlawfully—he expressly said so during

11

his field interview before he was arrested, see Gov't Return, Ex. A. And the arresting officers also would have had reason to believe Mr. Loja Loja would escape before a warrant could be obtained—he had already attempted to flee on foot when the officers first approached. Cuni Decl. ¶ 7. The purported sequencing error therefore did not prejudice Mr. Loja Loja because there is no dispute that the same officer could have arrested the same petitioner during the same interaction by a route that required less process.[3]

**2.**

Although § 1226(a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," it also provides that the alien "may" be released on bond or conditional parole. 8 U.S.C. § 1226(a)(2). "To secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." Johnson v. Guzman Chavez, 594 U.S. 523, 527 (2021) (citing 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8)). The relevant implementing regulation, 8 C.F.R. § 236.1(c)(8) provides that:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the

---

[3] Mr. Loja Loja's argument would also create perverse incentives. On the petitioner's view, his arrest would have been lawful if only the respondents had not taken the extra precaution of obtaining a supervisory probable-cause warrant. Not only does this argument implicitly concede that Mr. Loja Loja was not prejudiced by ICE's purported procedural violation—it could incentivize arresting officers in future situations to rely more on warrantless arrests pursuant to § 1357(a)(2).

Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

Although both the statute and the relevant regulation, 8 C.F.R. § 236.1(c)(8), use the word "may," "[t]he Supreme Court has interpreted similar 'may' language in other provisions of the INA to require the Attorney General to make some level of individualized determination." Velesaca v. Decker, 458 F. Supp. 3d 224, 235 (S.D.N.Y. 2020).

Mr. Loja Loja argues that the respondents violated 8 C.F.R. § 236.1(c)(8) because "the initial custody determination must occur prior to or contemporaneous with arrests made under § 1226(a)." Pet'r's Reply Supp. Pet. ("Reply") 10, ECF No. 16; see also Gopie, 2025 WL 3167130, at *2. But this argument is unpersuasive because neither the regulation nor the statute speaks to when DHS must conduct an individualized custody determination. DHS knows how to impose a temporal restriction for individualized custody determinations: 8 C.F.R. § 287.3(d), which applies to warrantless arrests pursuant to § 1357(a)(2), expressly provides that "a determination will be made within 48 hours of the arrest . . . whether the alien will be continued in custody or released on bond or recognizance." 8 C.F.R. § 287.3(d). The absence of any comparable language in 8 C.F.R. § 236.1(c)(8) therefore reinforces that the provision does not impose, at least by its terms, any limitation on when ICE must perform an individualized custody determination, although there would surely be a reasonableness requirement.

Furthermore, under the terms of the settlement agreement reached in Velesaca v. Decker—litigation about ICE's custody-determination practices under this very regulation—ICE has agreed "that it will conduct initial custody determinations within 48 hours of the covered noncitizen's arrest by [ICE] unless there is an exigent circumstance that impedes the determination, in which case a determination will be made as soon as practicable." Velesaca v. Decker, No. 20-cv-1803, Stipulation and Order of Dismissal and Settlement ¶ 11, ECF No. 177. Although the terms of the Velesaca settlement are not binding with respect to the proper interpretation of 8 C.F.R. § 236.1(c)(8), the fact that the parties and the court in that litigation concluded that it was permissible for ICE to conduct initial custody determinations within forty-eight hours supports the conclusion that the regulation does not include any stricter temporal restriction. In this case, Mr. Loja Loja received his individualized custody determination about five hours after he was arrested, Gov't Return, Exs. G & H—well within the forty-eight hours provided by the Velesaca settlement.

## B.

Mr. Loja Loja also argues that ICE violated his constitutional due-process rights by arresting him before issuing an NTA and conducting the initial custody determination during post-arrest processing.[4] These claims are

_____

[4] Mr. Loja Loja's due-process argument appears to rest on the premise that ICE's failure to comply with §§ 236.1(b)(1) and (c)(8) is itself a deprivation of due process. That premise is mistaken. An agency's violation of its own regulations does not work a constitutional violation where the regulation is not required by the Constitution or a federal statute. See United States v. Caceres, 440 U.S. 741, 749–55 (1979). Section 1226(a) authorizes arrest on a warrant and

14

evaluated under the three-factor balancing test outlined in <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976). "The three <u>Mathews</u> factors are: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." <u>Velasco Lopez</u>, 978 F.3d at 851.

At the first step of the <u>Mathews</u> test, the Court looks to "the private interest that will be affected by the official action." 424 U.S. at 335. In this case, "the private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." <u>Black v. Decker</u>, 103 F.4th 133, 151 (2d Cir. 2024).

Mr. Loja Loja's arguments fail, however, at the second and third steps of the <u>Mathews</u> analysis. As for the sequencing of the NTA, the analysis is straightforward. An NTA is a charging document: it identifies the noncitizen, specifies the charges of removability, and commences removal proceedings. Its

---

detention pending a decision on removal; it imposes no requirement that a notice to appear precede the arrest or that a custody determination precede detention. The sequencing requirements Mr. Loja Loja invokes are therefore ones the agency imposed on itself. Nor is this a case in which due process is implicated because a person reasonably relied on regulations promulgated for his benefit and suffered substantially from their breach. <u>See</u> <u>id.</u> at 752–53. Mr. Loja Loja does not contend that he was aware of the order in which ICE would generate the documents attending his arrest, much less that he relied on it. The question, then, is not whether ICE followed its regulations, but whether the process he received satisfied the Due Process Clause.

issuance does not test whether detention is warranted. On the warrant path, that function is served by the requirement that an authorized officer determine there is probable cause to believe the noncitizen is removable before issuing a Form I-200—a determination Officer Cuni made at approximately 4:37 p.m., before Mr. Loja Loja was arrested. Cuni Decl. ¶ 7. Issuing the NTA earlier would therefore have added nothing to the reliability of the decision to detain him. And the Government's interest in the existing sequence is substantial. Because an NTA must identify the noncitizen and the grounds of removability, ICE could not have prepared one before encountering Mr. Loja Loja, whose identity and immigration status were unknown until he supplied them during the field interview. Mr. Loja Loja's proposed rule would thus prevent ICE from arresting any noncitizen it had not identified in advance, however clear the evidence of removability developed at the scene.

Mr. Loja Loja's argument about the timing of his initial custody determination fares no better. There is no dispute that Mr. Loja Loja received an initial custody determination during which the respondents considered the relevant factors. Gov't Return, Exs. G & H. Mr. Loja Loja likewise acknowledges that he is entitled to de novo review of the respondents' custody determination by an immigration judge. His argument instead is that by waiting several hours to conduct an initial custody determination, rather than doing so at the time of arrest, the respondents increased the risk that he would be wrongly detained in the interim. But this argument fails for several reasons. First, requiring the respondents to conduct an initial custody determination at the time of arrest

16

rather than during processing would reduce the amount of information the respondents have about the noncitizen, which would <u>increase</u> the risk of erroneous deprivation. If anything, the "additional or substitute procedural safeguard" Mr. Loja Loja proposes here—initial custody determinations contemporaneous with arrest—would degrade the accuracy of the determination. Second, the <u>Mathews</u> inquiry asks about the risk of an erroneous deprivation, and Mr. Loja Loja does not contend, at least at this stage, that ICE's determination reached the wrong result. He argues only that it came too late.

As to the third factor, the Government has a substantial interest in ensuring that noncitizens subject to removal proceedings appear for those proceedings, and in conducting enforcement operations effectively. <u>See</u> <u>Demore v. Kim</u>, 538 U.S. 510, 520–21 (2003). Mr. Loja Loja's proposed rule would require ICE to complete an individualized custody determination before making an arrest under a Form I-200. That rule would impose costs at the point of arrest. Officers in the field would be required to assess community ties, residential stability, and likelihood of appearance—inquiries that depend on records checks and interviews ordinarily conducted at a processing facility—while the arrest itself remained unexecuted. Such a rule would either delay arrests already supported by probable cause or force officers to make custody determinations on incomplete information. And because the determination Mr. Loja Loja seeks would in practice supply less accurate results than the one he received, the additional burden would purchase no corresponding gain in reliability. Weighed against a deprivation of a few hours that was followed by an

individualized determination and the option of de novo review before an immigration judge, the Government's interest in conducting arrests without that added procedure survives constitutional scrutiny.

Although Mr. Loja Loja has a strong liberty interest at stake, the second and third Mathews factors weigh strongly against requiring the respondents to adopt, as a matter of constitutional law, the procedures proposed by Mr. Loja Loja. His due-process claims therefore fail.

## C.

Finally, Mr. Loja Loja argues that "[i]f the Court does not find that [his] immediate release is warranted, he respectfully requests that he receive a bond hearing at which the government bears the burden of justifying his detention by clear and convincing evidence." Reply 10.

The petitioner has a right to an individualized bond hearing, and the Government acknowledges as much. See 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1); see also Opp'n 7. "Having received an individualized determination in the first instance," however, Mr. Loja Loja "has no basis to challenge his detention in federal court until he avails himself of that right." Tambriz v. Blanche, No. 26-cv-4247, 2026 WL 1662129, at *1 (S.D.N.Y. June 9, 2026); see also Fontanelli ex rel. Bernal Garcia v. Francis, No. 25-cv-7715, 2025 WL 2773234, at *5–8 (S.D.N.Y. Sept. 29, 2025) (denying habeas petition brought by a Section 1226(a) detainee who had received an individualized determination for failing to exhaust administrative remedies). Because § 2241 contains

18

no statutory exhaustion requirement, the exhaustion of administrative remedies in this context is a prudential doctrine, and a court may excuse it where the available remedies are inadequate, where resort to them would be futile, or where undue prejudice would result. Washington v. Barr, 925 F.3d 109, 118–19 (2d Cir. 2019). But none of those circumstances is present here. The remedy Mr. Loja Loja seeks—an individualized bond hearing before an immigration judge—is one the Government concedes he is entitled to and is available on request. Requiring him to seek that hearing before invoking the jurisdiction of this Court also serves the purposes of the exhaustion doctrine: it permits the immigration judge to address his custody in the first instance, and the petitioner may well be released at that hearing. See, e.g., Marshall v. Arteta, No. 26-cv-4110, 2026 WL 1724311, at *4 (S.D.N.Y. June 15, 2026) ("Petitioner has a non-futile remedy available to him in the administrative system: The Government is offering him a bond hearing."). The immigration judge's determination on Mr. Loja Loja's request for a bond hearing "could potentially moot the habeas petition." Guzman v. Joyce, 786 F. Supp. 3d 865, 870–71 (S.D.N.Y. 2025). Although Mr. Loja Loja argues that the Government should bear the burden of proof at that hearing, "the question of whether [his] yet-to-happen bond hearing complies with due process is not before this Court." Id.

## CONCLUSION

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit.

For the foregoing reasons, the petition is denied as to Mr. Loja Loja's claims under 8 C.F.R. §§ 236.1(b)(1) and (c)(8) and the Due Process Clause. His alternative request for a bond hearing at which the Government bears the burden of proof is dismissed without prejudice for failure to exhaust administrative remedies.

The Clerk is respectfully directed to close ECF No. 3 and to close this case.

**SO ORDERED.**

**Dated:**   **New York, New York**
        **August 10, 2026**

_____
                **John G. Koeltl**
         **United States District Judge**